Pearson, J.
 

 The opinion in this case, directing the bill to be dismissed, was delivered at December Term, 1851, and the petition to re-hear .was not filed until after June
 
 *96
 
 Term, 1852; but a decree has not been signed.and passed. If that had been done, the petition to re-hear would certainly have come too late. Cooper’s Eq. pi. 91; Story’s Eq, pi. sec. 421. Whether, when .the decision is simply that the bill shall be dismissed, a decree to that effect will be .considered;as drawn, signed, passed and recorded as of the .time when the case is decided, so as to preclude a.petition to re-hear, we will now determine, because the case has been .fully argued upon the merits, and as ,we are satisfied there is no error, we prefer to put our present decision on- that -ground.
 

 The opinion under review admits the conclusion of Judge Story, that, when there is a change of domicil, the law of the
 
 actual domicil,
 
 and not that of the matrimonial domicil, will govern as to all future acquisitions of moveable property, and the decision is put on the ground that there are peculiar circumstances, which take the case.out of the operation of rthat general rule. These t circumstances are the indebtedness of Speight in this State, and ,his marriage in this State, whereby, according to our laws, he acquired rights in the property that his wife might afterwards acquire, which he could not relinquish or convey to a trustee, for the separate-use of his wife, without committing a fraud upon his creditors. For, although they had acquired no specific lien, yet the law protected them against any voluntary convey.ance of the debtor, and our inference is, “that his adopted State could not by a Statute do that for him which he could not do himself, without being guilty of a fraud; and we con- , elude that there is no principle in the doctrine of the comity .of nations, by which this State is called upon to standby and .see her citizens deprived of the right to collect their debts, out of property within her jurisdiction, by an act, which, if . done by the debtor himself, would
 
 he
 
 deemed fraudulent .and void. Nay more, by which she is called upon to set ¿aside her own laws, fo.r .the purpose.of carrying into opera-
 
 *97
 
 ■/cion a statute of another State, having this effect. And -we go on to challenge the production of any authority or any fair reasoning, by -which such a principle can be established, and the case of Olivier v. Townes, 14 Martin’s Rep. 97, is cited as going farther than our decision in support of the rights of creditors, who are citizens in this : our case was a contest between a creditor and
 
 a,vohmteer;
 
 that was a contest, between a creditor and a
 
 Iona fide purchaser for full value.
 

 • Mr. Moore
 
 admits, that he has not been able to find any authority opposed to our conclusion, and it was apparent from his very learned argument, that he had pushed his researches to the extreme. But he assailed our reasoning, and denied that the conclusion was a legitimate deduction from the premises. He also relied upon certain analogies as opposed to cur conclusion.
 

 As to the reasoning, he admitted that the debtor could not, without a fraud upon his creditors, relinquish his marital rights in favor of his wife, but ho insisted that it did not follow that the State of Mississippi could not do it for him by a general statute, and he took a distinction between the conveyance of the debtor and a statute. The one is the act of an individual, having a particular operation, hi fraud, of certain persons who ar;e his creditors. The other is the act of a State, having a general operation. He says, it is true, a citizen of North Carolina cannot, as against his creditors, relinquish his right to the future acquisitions *of his wife, but if North Carolina had in 1839 passed a Statute to' that effect, its operation would have. extended to debts then existing: and if North Carolina could have passed such a law, it follows that the State of Mississippi could do it also, It seems to us, this conclusion, in its application to the case .under consideration, is
 
 a non sequitur.
 
 Admit' that North Carolina could have passed such a law, in regard to her xOwn citizens and property within her own limits, does it fol
 
 *98
 
 low that if she deems it inexpedient to do so, the State of Mississippi can do it for her ?
 

 North Carolina may pass a law, that the estate of a deceased debtor shall be paid to his creditors rateably, without regard to the dignity of their debts. Suppose she passes no such law, but the State of Mississippi does, and a citizen of that State dies, leaving- property in this State, how will creditors in this State be paid ?
 
 Mr. Moore
 
 is compelled to admit, that the administration of the assets will be according to the dignity of the debts, the law of Mississippi to the contrary notwithstanding. This admission sweeps off the whole of his reasoning, and shows the fallacy to consist in not distinguishing between the effect, which a Statute in Mississippi has in regard to creditors and property in this State, and that which it has in regard to creditors and property in that State.
 

 By way of analogy,
 
 Mr. Moore
 
 put several cases, and cited many from the boolts. Among others, he put this : A citizen of another State, where by law a wife is entitled to the whole of the estate, as distributee, dies, leaving a widow there, and leaving children who reside in this State, and are indebted to certain of our citizens. Will his administrator here be directed to pay over the property, which is in this State, to the widow, according to the law of the domicil of the intestate, or will he be directed to pay a part of it to the children here, according to our Statute of Distributions, because, in that way, our citizens, who are the creditors of the children, may secure their debts ? Most unquestionably the widow would be entitled to the whole of the estate. But we are not able to perceive the analogy.
 

 A more apposite case would be
 
 this;
 
 a citizen of our State becomes indebted here, and removes to a State where, by law, in the event of his death, his widow is entitled to one-half of his estate, in preference to creditors: he
 
 *99
 
 <dies leaving his debts here unpaid, and leaving property here; mil his -administrator here be directed to apply the whole of the assets to the payment of' nis creditors, or to pay one-half to the widow, leaving debts unpaid ?
 

 Certainly there is nothing in the doctrine of the comity •of nations, that would induce our ‘Courts to give a preference to the widow, in exclusion of our own citizens, who are •creditors. He also put this case: suppose a citizen of Mississippi marries a lady there, who has a slave in this State : the slave being a chose in possession belongs, by our laws, to the husband. Can his creditors here attach the slave for the debts of the husband, or in case of his death, would his administrator take the slave as assets for' the payment of debts ?
 

 We are not now called -upon to decide this question.
 

 The counsel, throughout the entire argument, seemed to forget that in our case there are certain antecedents. Suppose the man lived hére, contracted debts here, married here, and then removed, and the State of Mississippi then passed a Statute securing to wives all property that they might become entitled to, by “ conveyance, gift, inheritance, distribution,or otherwise,” and the mother of the wife dies in this State, leaving her a negro, and the husband comes here and reduces him into possession, and dies, leaving the slave in this State. There you have our case.
 

 We are entirely satisfied that the administrator of the husband is chargeable with the slave, as assets for the payment of debts.
 

 PeR Cukiam. The petition to rehear must be dismissed with costs.